**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**ISMAEL ZAYAS JIMENEZ, et al.,**

**Plaintiffs,**

**v.**                                                    **CIVIL 06-1501 (GAG)(MEL)**

**ANGEL HERNANDEZ, et al.,**

**Defendants.**

**OPINION AND ORDER**

Plaintiffs, Ismael Zayas Jiménez, Omar Zayas Fonseca, and Ana Teresa Zayas Fonseca (hereinafter collectively "Plaintiffs"), filed this suit alleging constitutional rights violations under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution. They bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging a claim of excessive use of force, as well as state law claims under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141, and Article II of the Constitution of the Commonwealth of Puerto Rico. Defendants Angel D. Hernández, Elvin Rivera, John Doe, Mariano Quiñones, Héctor Alvelo, Ariel López, and Iván Díaz (hereinafter collectively "Defendants") timely moved for summary judgment based on failure to state a claim, qualified immunity, Eleventh Amendment immunity, and inapplicability of the doctrine of supervisory liability. After a thorough review of all pleadings and pertinent law, the court **DENIES** defendants' motion for summary judgment (Docket No. 134).

**I.      Standard of Review**

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law'." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The

**Civil No. 06-1501 (GAG)(MEL)**

moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.  The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences.  <u>Id.</u> at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  <u>Id.</u>  Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Material Facts and Procedural Background**

Consistent with the summary judgment standard, the court states the facts in the light most favorable to Plaintiffs.  <u>See</u> <u>Iverson</u>, 452 F.3d at 98.  Additionally, in accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations.  <u>See</u> Local Rule 56(e).  The court has disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised as facts.  <u>See</u> <u>Forestier Fradera</u>, 440 F.3d at 21; <u>Medina-Muñoz v. R.J. Reynolds Tabacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

On May 21, 2005, plaintiff Ismael Zayas was driving toward San Juan on Road 1.  <u>See</u> Docket No. 63, ¶ 24.  Plaintiffs admit that he had consumed alcohol prior to operating his vehicle.  <u>Id.</u> at ¶ 25; Docket No. 165-3 at ¶ 4.  On that night, Mr. Zayas was pulled over by police officers Angel Hernández Picart and Elvin Rivera for allegedly failing to wear his seatbelt.  <u>Id.</u> at ¶ 26.  Mr. Zayas was given a traffic ticket to that effect.  <u>See</u> Docket 134-3.  After pulling him over, agents

2

**Civil No. 06-1501 (GAG)(MEL)**

1   Hernández and Rivera noticed that Mr. Zayas smelled of alcohol and administered a field test.

2   Docket No. 136, ¶ 6; Docket No. 63, ¶ 28.   Plaintiffs contend that, after the filed test was

3   administered, Mr. Zayas was grabbed and forcefully removed from his car by the intervening agents.

4   See Docket No. 165-3, ¶ 7; Docket No. 63, ¶ 29.   After Mr. Zayas exited the vehicle (or was

5   forcefully removed), his pants began to fall below his waistline.  See Docket No. 63, ¶ 30.  Agents

6   Hernández and Rivera subsequently placed Mr. Zayas under arrest for driving under the influence.

7   See Docket No. 63, ¶ 31.  Plaintiffs allege that Mr. Zayas was not allowed to pull his pants back up

8   securely before being handcuffed and that during the arrest he was deliberately and intentionally hit

9   in the chest, arms, and legs by agents Hernández and Rivera.  See Docket No. 63, ¶¶ 31, 33, 34.  Mr.

10   Zayas testified in his deposition that police-issued batons were used during the assault.  See Docket

11   No. 165-4 at 27-29.  Defendants, in turn, contend that Mr. Zayas displayed hostile behavior and

12   resisted arrest, which is why the intervening officers had to struggle with him in order to secure the

13   handcuffs.  See Docket No. 136, ¶ 10.  Agent Hernández testified that the force used against Mr.

14   Zayas was only that necessary in order to arrest him and that no baton was used during the

15   intervention.  See Docket No. 165-8 at 3.

16         After being placed under arrest, Mr. Zayas was taken by agent Hernández to the Caguas

17   Transit Station.  See Docket No. 136, ¶ 11.  Mr. Zayas testified that he was assaulted once again by

18   agent Hernández in the parking lot, before entering the Transit Station.  See Docket No. 165-4 at 44-

19   49; Docket No. 63, ¶ 37.  Once inside the Station, a breathalyser test was administered and indicated

20   that Mr. Zayas had a blood alcohol level of 0.183%.  See Docket No. 63, ¶ 13.  After administering

21   the breathalyser test, Mr. Zayas was given citations for hitting a police officer, resisting arrest, and

22   driving while intoxicated.  See Docket Nos. 134-5, 134-6, 134-7.  Finally, the direct supervisor of

23   agents Hernández and Rivera on the night of May 21, 2005, Sergeant Mariano Quiñones, drove Mr.

24   Zayas to his home.  See Docket No. 136, ¶ 14, 27.  Plaintiffs allege that, having been severely

25   beaten, Mr. Zayas was in need of immediate medical attention, but none was provided.  See Docket

26   No. 165-3, ¶ 14.  After arriving at his home, Mr. Zayas was rushed to the hospital by his son.  See

27

28                                             3

**Civil No. 06-1501 (GAG)(MEL)**

1  Docket No. 63, ¶ 47.

2      On July 14, 2006, Mr. Zayas was convicted for driving under the influence of alcohol.  <u>See</u>

3  Docket No. 134-8.  Mr. Zayas filed an administrative complaint against the police officers involved

4  in his arrest, but the same was dismissed on August 15, 2006 for lack of sufficient proof.

5  <u>See</u> Docket No. 134-11.  Mr. Zayas appealed the dismissal, but after failing to appear at the court

6  ordered hearing and not showing cause why the complaint should be denied for lack of prosecution,

7  the administrative appeals panel dismissed the complaint on December 4, 2007.  <u>See</u> Docket No.

8  134-12.

9      The original complaint in this case was filed was filed on May 15, 2006 (Docket No. 1)

10  against agents Hernández and Rivera, as well as Sargent Quiñones.  Defendants "John" and "Richard

11  Doe" were also named in the complaint, respectively, to represent all police officers who at times

12  relevant to this complaint were present and/or participated in the use of excessive force, but did

13  nothing to stop it, as well as supervisors who failed to adequately train and monitor the alleged

14  assailants.  Plaintiffs amended their complaint on March 14, 2007 and on October 3, 2007 (Docket

15  Nos. 43 & 63) to include other supervising officers, namely  Héctor Alvelo, Iván Díaz, and Ariel

16  López.  Defendants filed a motion for summary judgment on November 28, 2008 (Docket Nos. 134-

17  136), which was opposed by Plaintiffs on December 23, 2008 (Docket No. 165).

18  **III.     Discussion**

19      Defendants move for summary judgment on various grounds: failure to state a claim,

20  qualified immunity, Eleventh Amendment immunity, and inapplicability of the doctrine of

21  supervisor liability.  The court addresses each averment separately.

22      **A.     Failure to state a claim**

23      Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983, which provides a cause

24  of action for any person whose constitutional rights are violated under color of state law.  Section

25  1983 is not a source of substantive rights.  Instead, it provides a procedural mechanism for enforcing

26  federal constitutional or statutory rights.  <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994).  Therefore,

27

28                           4

**Civil No. 06-1501 (GAG)(MEL)**

1  a Section 1983 plaintiff must identify the particular federal right that he seeks to enforce via judicial

2  proceedings.  In order to prevail in a Section 1983 claim, a plaintiff must demonstrate that the

3  defendant (1) acted under color of state law and (2) deprived him of the identified federal right.

4  Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) (quoting Romero-Barcelo v.

5  Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996)).  To satisfy the second element, plaintiffs must

6  show that the defendants conduct was the cause in fact of the alleged deprivation.  Rodríguez Cirio

7  v. García, 115 F.3d.50, 52 (1st Cir. 1997).

8  In this case, Plaintiffs contend that Ismael Zayas was assaulted during a traffic stop by

9  defendants Angel Hernández and Elvin Rivera, officers in the Puerto Rico Police Department, who

10  used excessive force without provocation or reason.  It is further alleged that other officers,

11  collectively named "John" and "Richard Doe" in the complaint, were at the scene and did nothing

12  to stop the use of excessive force.  Plaintiffs also contend that supervising officers, Mariano

13  Quiñones, Héctor Alvelo, Ariel López, and Ivan Díaz failed to protect plaintiff Ismael Zayas by

14  providing inadequate training and supervision to the officers under their charge.  As police officers,

15  Defendants were acting under color of law.  Furthermore, these allegations, if taken as true, certainly

16  constitute a constitutional violation under the Fourth Amendment, which bars the use of

17  unreasonable force during an arrest.  Hence, Plaintiffs have established their Section 1983 claim.

18  **B.     Qualified Immunity**

19  Public officials are entitled to qualified immunity from damages in a Section 1983 claim "if

20  they acted with the objective good faith belief that they were not violating the plaintiff's statutory

21  or constitutional rights, as measured by the state of the law when the deprivation occurred."  See

22  Maldonado Santiago v. Velázquez García, 821 F.2d 822, 830 (1st Cir. 1987).  The three-part inquiry

23  requires the court to consider: (1) whether the plaintiff's allegations, if true, establish a constitutional

24  violation; (2) if so, whether the right was clearly established at the time of the alleged violation; and

25  (3) whether a similarly situated reasonable official would have understood that the challenged action

26  violated that right.  Whalen v. Mass. Trial Court, 397 F.3d 19, 23 (1st Cir. 2005).  Since qualified

27

28

**Civil No. 06-1501 (GAG)(MEL)**

immunity is an affirmative defense, the defendant has the burden to present evidence that he acted objectively reasonable under the circumstances.  See id. at 345.

In the present case there are material facts in dispute regarding the objective reasonableness of Defendant's actions.  Therefore, the court cannot at this stage determine whether Defendants are eligible to receive qualified immunity.

**C.      Eleventh Amendment**

The Eleventh Amendment bars suits against states for money damages unless the state has consented.  See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority, 991 F.2d 935, 938 (1st Cir.1993); In re San Juan Dupont Plaza Hotel Fire Lit., 888 F.2d 940, 942 (1st Cir.1989); Ramírez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir.1983).[1]  Eleventh Amendment Immunity extends to arms or "alter egos" of the State.  Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp., 322 F.3d 56 (1st Cir.2003); Bernier-Aponte v. Izquierdo-Encarnación, 196 F.Supp.2d 93, 98-99 (D.P.R.2002).  Suits filed against state officials in their official capacity are deemed actions against the state, regardless if the state is a named party to the suit, if the real party in interest is the State and not the official.  Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Consequently, when as here, Plaintiff brings a suit against a Puerto Rico state official in his personal capacity rather than against the Commonwealth of Puerto Rico itself, the Court must ascertain whether the suit in reality is a suit against the Commonwealth of Puerto Rico.  Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir.2005).  This analysis examines the conduct challenged and the relief sought.  Id.  When the actions of an officer do not conflict with the terms of his valid statutory authority, they are considered actions of the sovereign, which are protected by the Eleventh Amendment.  Larson v. Domestic & Foreign Commerce Corp., 337 U.S.

---

[1] It is well-established that the Commonwealth of Puerto Rico is considered a state for Eleventh Amendment purposes. See Bernier-Aponte v. Izquierdo-Encarnacion, 196 F.Supp.2d 93, 98 (D.P.R.2002)( citing Negrón Gaztambide v. Hernández Torres, 145 F.3d 410 (1st Cir.1998)).

**Civil No. 06-1501 (GAG)(MEL)**

682, 695 (1949).  However, the doctrine of sovereign immunity does not apply when an officer's power is limited by Constitution or statute and his actions go beyond those limitations.  Id. at 689; see also Muirhead, 427 F.3d at 19.  Furthermore, when the relief sought "would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act" the suit will be considered one against the sovereign. Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citations omitted).

Plaintiffs in the instant case did not sue either the Commonwealth of Puerto Rico or any of its instrumentalities.  Furthermore, because Defendants are sued in their individual capacities, any damage award would not be paid from the Commonwealth's coffer, but rather from Defendants' own assets.  Thus, this is not a suit directed at the Commonwealth of Puerto Rico itself, but rather at the Defendants in their personal capacities. Therefore, Eleventh Amendment Immunity is inapplicable in the present case.

**D.    Supervisory Liability**

Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir.2005)(internal citation omitted).  "[A]bsent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence . . . amounting to deliberate indifference." Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 24 (1st Cir. 2006) (citing Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir.1995) (internal citations, quotation marks and punctuation denoting alterations omitted)).  A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an

**Civil No. 06-1501 (GAG)(MEL)**

individual's constitutional rights." <u>Germany v. Vance</u>, 868 F.2d 9, 18 (1st Cir.1989). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." <u>Hegarty v. Somerset County</u>, 53 F.3d 1367, 1380 (1st Cir.1995)(internal citations and quotations omitted).

As regards Mariano Quiñones, Héctor Alvelo, Ariel López, and Ivan Díaz, Defendants raise the applicability of qualified immunity to the supervisory action alleged by Plaintiffs.  However, such a determination is, to a substantial extent, a fact-dependent, gray area. <u>See Camilo-Robles v.</u> <u>Zapata</u>, 175 F.3d. 41, 44 (1st Cir.1999).  For this reason, and given the existence of multiple issues of fact regarding who was in charge of the alleged assailants on the day of the arrest, <u>see</u> Docket No. 136, ¶¶ 29-36, 39; Docket No. 165-3, ¶¶ 30-32, 34-36, 39, the court cannot at this stage determine whether the supervisory defendants are liable under this doctrine.

**IV.     Conclusion**

For the aforementioned reasons, the court **DENIES** defendants' motion for summary judgment (Docket No. 134).

**SO ORDERED.**

In San Juan, Puerto Rico this 21st day of January, 2009.


*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

8